**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CHAPTER 7 |
| | ) | |
| ROBERT J. FERRARI, | ) | CASE #15-35985 |
| | ) | |
| DEBTOR. | ) | JUDGE JANET S. BAER |
| DAVID R. BROWN, not individually but as Trustee for Robert J. Ferrari, | ) ) ) | |
| PLAINTIFF, | ) | |
| v. | ) | ADV. NO. 17-00192 |
| | ) | |
| ROBERT J. FERRARI, | ) ) | Trial: January 9, 2018 @10;30 am. |
| DEFENDANT. | ) | |

**JOINT PRETRIAL STATEMENT**

COMES NOW, the Plaintiff, David R. Brown, Trustee ("Trustee") and the Defendant, Robert J. Ferrari ("Ferrari"), by and through their respective counsel, Elizabeth A. Bates and J. Kevin Benjamin, and in accordance with this Court's Final Pretrial Order, submit their Joint Pretrial statement in connection with the Trustee's Complaint Objecting to Discharge ("Complaint") respectfully stating as follows:

**STATEMENT OF THE THEORY OF EACH CLAIM AND EACH DEFENSE**

**A. Trustee's Claims**

1. 11 USC 727(a)(2)(A)- The most significant asset in the Ferrari bankruptcy case is Ferrari's home located at 810 Brentwood Drive, Bensenville, Illinois 60106 (Residence") which at the time of filing had a value between $300,000.00 and $500,000.00. The Residence was encumbered with a purchase money first mortgage in the amount of $145,000.00. Within 112 days of the filing of Ferrari's Chapter 13 bankruptcy case on July 2, 2015, Ferrari

executed a mortgage in favor of his longtime friend, Michael Auriemma ("Auriemma") in the amount of $375,000.00 ("Auriemma Mortgage") to secure alleged cash loans made to Ferrari in the amount of $240,000.00 beginning in 2012. By the execution of the Auriemma Mortgage Ferrari transferred between $155,000.00 and $355,000.00 in equity to his friend which would otherwise be available for distribution to creditors. Ferrari is unable to account for the receipt, location or disposition of any amounts loaned by Auriemma, except for $12,000.00.

2. 11 USC 727(a)(3) - Ferrari asserts in his bankruptcy schedules that he received $240,000.00 in loans from Auriemma between 2012 and July 2, 2015, but has no records of the receipt of any of the loan proceeds, except for a 10/2/14 wire transfer of $12,000.00 made by Auriemma from his MB Bank account to attorneys for Ferrari handling a real estate closing. The remaining $228,000.00 in loan proceeds is completely undocumented, there are no checks, no receipts, no bank account deposit slips, no evidence of property purchased or bills paid during three years. The Trustee asserts that Ferrari has failed to keep or preserve any records from which the receipt, use, disposition, or location of $228,000.00 in loan proceeds can be ascertained. The failure of Ferrari to keep or preserve any records regarding the receipt, use, disposition or location of $228,000.00 in cash loan proceeds is not justified under any circumstances.

3. 11 USC 727(a) (5) - Trustee asserts that Ferrari has failed to satisfactorily explain when the $228,000.00 in cash loan proceeds were received and what was done with the $228,000.00 in cash loan proceeds. The Trustee asserts that Ferrari has also failed to satisfactorily explain the need to execute a mortgage in favor of Auriemma in the amount

of $375,000.00 after three years of unsecured loans and in an amount which would remove all equity available for creditors.

## B. Ferrari's Summary and Theory of the Case

1. Ferrari borrowed money from Auriemma either as an individual or from his Nationwide Mortgage and Realty, Inc., the loans were in cash, which is not illegal and is not fraud and given the nature of the Ferrari's business is not strange. These loans were over a period of years and not in one lump sum.

2. At a certain point Ferrari could not borrow any more money for lack of collateral. He was involved in other litigation and his home was used as collateral with no equity left. When one of the cases settled, (involving FirstMerit Bank and Stave Properties) part of the settlement agreement called for FirstMerit to release its lien. When that was done, voluntarily by FirstMerit, MR. Ferrari had substantial equity created in his home. Mr. Ferrari used his equity as security to enter into a home equity line of credit. The equity changed his circumstances to the extent where he would previously be denied for more credit or loans he now was able to get Mike Auriemma and Nationwide to agree to the home equity line of credit, which was entered into around July 2, 2015, and recorded. The only change in circumstances that caused that lien was the release of the lien of FirstMerit from a settlement and not from any calculated attempt by Ferrari to hinder, delay or defraud his creditors.

3. Ferrari was still had a pending federal foreclosure case pending with FirstMerit Bank. Ferrari, through his attorneys at the time, made numerous good faith attempts to resolve that matter to no avail, for many months prior to the filing of his original chapter 13. In fact the Ferrari engaged in settlement discussions with FirstMerit, his biggest creditor at the

time, that offered to pay (but over time) amounts very similar to what FirstMerit alleges they were owed.

4. When that did not pan out, his then lawyers advised him to file bankruptcy and to seek other counsel to do so which Ferrari did, in taking the advice from his other lawyers. He did not want to file bankruptcy but was advised to do so and in October of 2015, prior to a hearing in federal court on a judgment award, he filed his chapter 13.

5. As noted in the Order converting the case to chapter 7, Judge Cassling noted in relation to the pending foreclosure judgment against Ferrari that the circumstances surrounding Ferrari's bankruptcy filing (the timing of the petition and the Debtor's motive in filing) may not support a finding of bad faith. Merely filing a bankruptcy petition prior to some significant event in state court litigation does not constitute bad faith. Ho v. Dowell (Jn re Ho), 274 B.R. 867, 876-77 (B.A.P. 9th Cir. 2002). Debtors often file bankruptcy cases prior to or shortly after a judgment is entered against them. See Jn re Dental Profile, Inc., 446 B.R. 885, 900 (Bankr. N.D. Ill. 201 1) ("A substantial judgment entered against a debtor is often the trigger for the filing of bankruptcy."); Jn re Local Union 722 Int 'I Bhd. of Teamsters, 414 B.R. 443, 448 (Bankr. N.D. Ill. 2009) (stating that "filing a chapter 11 case after falling on the wrong side of a judgment is not uncommon").

6. The trustee makes an issue of Ferrari filing his chapter 13 within "112 days" of the recording of the lien, alleging that it was calculated to avoid a preference claim but the fact is Ferrari never considered, or was even advised, to file chapter 13 until a few days before he actually did, which would have been past the preference period anyway. He did not even know what a preference was. He never was calculating days to file a chapter 13. It happened that his hand was forced by FirstMerit in October of 2015 resulting in his filing.

   The result may have been 112 days after the home equity line of credit mortgage but that is just derived from the circumstances surrounding the federal foreclosure case situation that happened to be in October of 2012.

7. In the prior chapter 13 no one, not the chapter 13 trustee nor any creditor attempted to avoid that lien as a preferential transfer or fraudulent transfer though any creditor or the chapter 13 trustee could have.  Had the lien been removed a new liquidation test would have resulted and Ferrari would have been forced to file a new chapter 13 plan to compensate for any non-exempt assets in order to get his chapter 13 confirmed.

8. Ferrari could have done this, as evidenced by offers he made to FirstMerit before filing chapter 13 and his written offers to them after filing chapter 13 (that also supported that he could come up with the money to fund that type of plan) which were for sums in excess of the settlement the chapter 7 trustee received in his lawsuit against Auriemma in the adversary proceeding filed by the trustee after the conversion.

9. The fact is Ferrari was treating his biggest creditor, not only fairly, he was trying to pay and the result would have been a payment well in excess of what they will receive as an unsecured creditor in this chapter 7, as they now share with other unsecured creditors and share a payout much less then they were offered.  This is not Ferrari's doing, he treated them fairly and did not try to hinder or delay or defraud them or any creditor and his actions support that.

10. In fact in the current chapter 7 there has never been any determination as to Ferrari being involved in preferential or fraudulent transfer that the trustee now alleges as a basis to attempt to deny discharge. The fact is Ferrari filed his chapter 13 in good faith to attempt to repay anything he owed which is what chapter 13 is for.

11. In the original chapter 13 and circumstances surrounding its conversion it appears FirstMerrit was upset they removed their lien voluntarily and when they were pressuring the Debtor to pay $248,000 (on an $85,000 deficiency) that the Debtor could not pay they forced the Debtor to seek protection under the bankruptcy laws. That is NOT bad faith. That is often why debtors file for protection under the bankruptcy laws and why the bankruptcy laws are here.

12. The trustee moves to deny discharge for among things the facts and circumstances surrounding the Debtors purchase of his 2010 Mercedes-Benz in September of 2013. In the Order converting the case to chapter 7 Judge Cassling determined the facts and circumstances surrounding the 2010 Mercedes-Benz purchase was in good faith not bad faith.

### C. Ferrari's Defenses

1. **11 USC 727(a)(2)(A):** The evidence will show that under the totality of the circumstances test, Ferrari has never transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—property of the debtor, within one year before the date of the filing of the petition; with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property.

2. **11 USC 727(a)(3):** The evidence will show that Ferrari has never concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. In fact Ferrari has produced to the chapter 7 trustee numerous documents on his financial condition and business

records that was asked of him and that was justified under the circumstance. The sums received by Ferrari were in amounts over several years going back to 2012, 3 years before he filed chapter 13. There is nothing in the record to suggest that he contemplated filing bankruptcy way back then or was plotting to not keep records regarding the receipt, use, disposition or location of $228,000.00 in cash loan proceeds. Not doing so many years prior to filing chapter 13 is justified under the circumstances.

3. **USC 727(a) (5):** The evidence will show that Ferrari has not failed to explain satisfactorily, any loss of assets or deficiency of assets to meet the debtor's liabilities. Ferrari has explained when the $228,000.00 in cash loan proceeds were received and what was done with the $228,000.00 in cash loan proceeds. Further Ferrari has explained, and the facts and circumstances support, the need to execute a mortgage in favor of Auriemma/Nationwide in the amount of $375,000.00 after three years of unsecured loans.

## STATEMENT OF STIPULATED FACTS

1. This Court has jurisdiction over this Matter pursuant to 28 U.S.C. §§157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

3. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J)

4. Debtor's Chapter 7 case was commenced on October 22, 2015 by the filing of a Voluntary Petition for Relief under Chapter 13 of the United States Bankruptcy Code. On October 17, 2016 the Chapter 13 case was involuntarily converted to Chapter 7 of the Bankruptcy Code and is now pending thereunder.

5. Plaintiff David R. Brown is the duly appointed and qualified trustee herein and continues to act in that capacity.

6. At the time of commencement of this case, and at all times relevant hereto, Debtor was the owner of, and currently resides at, residential real estate commonly known as 810 Brentwood Drive, Bensenville, IL 60106 (the "Real Estate").

7. Ferrari is a licensed real estate broker.

8. Ferrari is the President and sole stockholder of Best Seats Available, Inc.

9. Michael Auriemma (hereafter "Auriemma") is an individual who resides at 628 Diana Court, Bensenville, Illinois 60523.  Auriemma has been described by Ferrari as his close personal friend of Ferrari.  Ferrari and Auriemma have been friends for approximately 40 years and are neighbors, Ferrari is godfather to one of Auriemma's children.

10. Auriemma owned and had managed for many years a mortgage broking business named Nationwide Mortgage and Realty, LLC ("Nationwide").

11. In 2012, Debtor, accompanied by Auriemma, visited Nationwide and applied for a mortgage loan from Nationwide. That application was denied due to Ferrari's failure to meet the minimum lending standards of Nationwide.

12. On February 11, 2005, the Stave Properties, Inc. ("Stave") executed a note ("Stave Note") and a mortgage in favor of Mount Prospect National Bank on the property commonly known as 2170-2174 North Stave Street, Chicago, Illinois (the "Stave Property") in favor of Mount Prospect National Bank.

13. Stave is an Illinois corporation which was owned by Ferrari and Joseph Betancourt ("Betancourt").

14. On February 11, 2005 Ferrari executed a guaranty of Stave Note and executed a second mortgage on the Residence in favor of Mount Prospect National Bank ("Stave Mortgage").

15. First Merit Bank was the successor in interest to Mount Prospect National Bank as to the Stave Note and the Stave Mortgage.

16. First Merit Bank filed a complaint to foreclose mortgage and to recover on note and guaranties against Stave, Ferrari and Betancourt ("Stave suit") and obtained a judgment on April 17, 2015 in the amount of $246,772.95.

17. On April 21, 2015 a Notice of Satisfaction of Judgment was filed by First Merit in the Stave suit.

18. On May 4, 2015 a Release of Mortgage as to the First Merit mortgage was recorded with the DuPage Recorder's office.

19. On June 27, 2013 Ferrari purchased a 2010 Mercedes Benz S550 4Matic Vehicle Identification Number WDDNG8GB5AA361054 ("2010 Mercedes Benz").

20. On September 20, 2013 a Certificate of Title was issued for the 2010 Mercedes-Benz showing Auriemma as the first lienholder, and Robert Ferrari as the owner the 2010 Mercedes-Benz, though Ferrari does not have a Bill of Sale or receipt for the purchase of the 2010 Mercedes Benz.

21. On November 16, 2015, Chase recorded an Assignment of Mortgage on the Residence from the Federal Deposit Insurance Corporation, Receiver pursuant to which Chase succeeded to the interest of Washington Mutual Bank, holder of the original mortgage recorded on November 8, 2004 with the DuPage County Recorder of Deeds as Document R2004-293773.

22. Ferrari filed a Schedule A-Real Property on November 20, 2015 which stated that the Residence had a current value of $330,000.00 and the amount of the total secured claim was $387,970.00.

23. Ferrari filed a Schedule B-Personal Property listing ownership of 1,000 shares of Best Seats Available, Inc. with a current value of $10.00 and a 2010 Mercedes Benz with a current value of $28,926.00.

24. Ferrari filed a Schedule D- Creditors Holding Secured Claims on 11/20/15 which listed Washington Mutual Mortgage/Chase Home Finance ("Chase") as having a first mortgage on the Residence in the amount of $147,970.00.

25. Ferrari filed a Schedule D-Creditors Holding Secured Claims which listed Nationwide as having a July 2, 2015 Home Equity Line of Credit in the amount of $240,000.00 and a lien on Auto in the amount of $35,000.00

26. The 11/20/15 Statement of Financial Affairs #3, 6 and 7 do not show any payments to Auriemma.

27. The 1/28/16 Amended Schedule D shows Nationwide as having a secured claim of $35,000.00 secured by the 2010 Mercedes Benz.

28. Ferrari filed an Amended Schedule D on 1/28/16 listing Washington as having a first mortgage on the Residence in the amount of $148,119.85.

29. The 1/28/16 Amended Statement of Financial Affairs # 3, 6 and 7 do not show any payments to Auriemma.

30. Ferrari obtained an appraisal of the Residence in November, 2015 which listed a value of $330,000.00 for the Residence. Both the 11/20/15 Schedule A and the Amended 1/28/16 Schedules A/B show the market value of the Residence as $330,000.00.

31. On January 28, 2016 Ferrari filed an Amended Schedule A/B Property listing the current value of his 1,000 shares of Best Seats Available, Inc. at a current value of $1,500.00 and

listing his 100% ownership of interest in Diversified Real Properties, Ltd at a current value of $500.00.

32. Auriemma is not individually scheduled as a secured creditor in either the November 20, 2015 Schedules or the January 28, 2016 Schedules, Auriemma is listed as being notified as to the Nationwide debts.

33. Ferrari executed a Mortgage and Security Agreement on July 2, 2015 to secure an open-end revolving Home Equity Line of Credit and Future Advances with a credit limit of $375,000.00 in favor of Nationwide Mortgage and Realty LLC ("Nationwide Mortgage").

34. The Nationwide Mortgage has a credit limit of $375,000.00, with a maturity date of July 2, 2020, with a balloon payment rider attached to it.

35. The Nationwide Mortgage was in the nature of "revolving Credit" which specified that the "Mortgagee secures advances so made, regardless of whether the monies are advanced or applied within 18 months of the recording of this Security Agreement."

36. Ferrari executed a Balloon Home Equity Line of Credit Agreement and Disclosure Statement on July 2, 2015 in favor of Nationwide ("Nationwide HELOC Agreement").

37. Ferrari also executed a Balloon Home Equity Line of Credit Agreement and Disclosure Agreement in favor of Nationwide ("Undated Nationwide HELOC Agreement").

38. Ferrari never executed a Balloon Home Equity Line of Credit Agreement and Disclosure Statement in favor of Auriemma.

39. Ferrari's Chapter 13 bankruptcy case was filed 112 days after the recordation of the Auriemma Mortgage.

40. On October 17, 2016, Judge Donald R. Cassling entered an Order Granting Motion to Convert Case to Chapter 7 after a hearing on the First Merit Bank Motion to convert Chapter 13 Case to a chapter 7 Case.

41. At the time that Ferrari filed his Chapter 13 bankruptcy case, he was insolvent.

## STATEMENT OF FACTS IN DISPUTE

1. Whether Nationwide made any loans or advances to Ferrari in the time period 2012-2015.

2. Whether there is any note or other documentation to evidence the loan or first lien of Auriemma on the 2010 Mercedes-Benz

3. Whether Ferrari was the purchaser of the 2010 Mercedes Benz.

4. Whether Auriemma is a creditor or Nationwide.

5. Whether Auriemma or Nationwide is the mortgagee with respect to the Mortgage and Security Agreement Ferrari signed as mortgagor dated July 2, 2015.

6. Whether Auriemma or Nationwide has asserted a junior mortgage on the Residence.

7. Whether Ferrari executed a Mortgage and Security Agreement on July 2, 2015 to secure an open-end revolving Home Equity Line of Credit and Future Advances with a credit limit of $375,000.00 in favor of Auriemma, or rather Nationwide.

8. Whether the Mortgage provide for the payment of interest on any funds disbursed to Ferrari under the terms of the Mortgage.

9. Whether Ferrari was truthful on his 11/20/15 Statement of Financial Affairs #3, 6 and 7 that do not show any payments to Auriemma.

10. Whether Ferrari was truthful on his 1/28/2016 Amended Statement of Financial Affairs #3, 6 and 7 that do not show any payments to Auriemma.

11. Whether Ferrari executed a Mortgage and Security Agreement on July 2, 2015 to secure an open-end revolving Home Equity Line of Credit and Future Advances with a credit limit of $375,000.00 in favor of Auriemma, or rather Nationwide.

12. Whether Ferrari has ever alleged that Auriemma or Nationwide made loans to Best Seats Available, Inc.

13. Whether Ferrari Whether executed a Dated Balloon Home Equity Line of Credit Agreement and Disclosure Agreement in favor of Nationwide ("Undated Nationwide HELOC Agreement").

14. Whether the Mortgage provides for payment of interest on any funds disbursed to Ferrari under the terms of the Auriemma Mortgage.

15. Whether Ferrari has transferred, removed, destroyed, mutilated, or concealed, or had Ferrari permitted to be transferred, removed, destroyed, mutilated, or concealed any property of his within one year before the date of the filing of the petition or property of the estate after the date of the filing of the petition for relief, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of any property.

16. Whether Ferrari has produced records to Plaintiff, which provided Plaintiff with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.

17. Whether Ferrari has made any false oath or account, or withheld from an officer of the estate entitled to possession under this title, any recorded information, including

books, documents, records, and papers, relating to the debtor's property or financial affairs.

18. Whether Ferrari has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

19. Whether Ferrari has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

20. Whether any of Ferrari's acts or averments were fraudulent or were made with intent to defraud the bankruptcy court and/or creditors.

21. Whether Auriemma personally lent Ferrari $202,000.00 during the years 2012 through 2015?

22. Whether there is a payment schedule or a stated interest rate for any of the Auriemma loans.

23. Whether there is accrued interest of $38,000.00 due on the Auriemma Mortgage.

24. Whether any funds were advanced to Ferrari by Auriemma in 2015.

25. Whether Auriemma loaned Ferrari $50,000.00 in June, 2013 to purchase a 2010 Mercedes Benz S550 4Matic.

26. If Auriemma did make loans to Ferrari what happened to the $240,000.00 in loan proceeds.

27. Whether Ferrari granted the July 2, 2015 mortgage to Auriemma within one year of his bankruptcy filing for the purpose of hindering, delaying or defrauding creditors.

42. Whether Ferrari did conceal, destroy, mutilate, falsify or fail to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

43. Was Ferrari's failure to keep or preserve recorded information regarding his financial condition or business transactions justified under all of the circumstances of his case?

44. Has Ferrari failed to explain satisfactorily the receipt and disposition of the alleged Auriemma loan proceeds and deficiency of assets to meet his liabilities?

45. Has Ferrari maintained reasonable books and records for Best Seats Available, Inc.

## PLAINTIFF'S WITNESS LIST

1. David R. Brown
2. Robert J. Ferrari
3. Michael Auriemma

## DEFENDANT'S WITNESS LIST

1. Robert Ferrari
2. Michael Auriemma
3. Maria Salgado

## PLAINTIFF'S EXHIBIT LIST

1. October 22, 2015 Chapter 13 Petition;
2. November 20, 2015 Chapter 13 Bankruptcy Schedules and Statement of Financial Affairs;
3. November 20, 2015 Signature pages for Schedules and Statement of Financial Affairs;
4. December 2, 2015 Certified Transcript of Ferrari's Chapter 13 First Meeting of Creditors;
5. January 28, 2016 Amended Schedules;

6. January 28, 2016 Amended Statement of Financial Affairs;

7. July 2, 2015 Mortgage and Security Agreement executed in favor of Michael Auriemma;

8. July 2, 2015 Mortgage and Security Agreement executed in favor of Nationwide;

9. Balloon Home Equity Line of Credit Agreement and Disclosure Statement executed on July 2, 2105 in favor of Nationwide;

10. Undated Balloon Home Equity Line of Credit Agreement and Disclosure Statement in favor of Nationwide;

11. MB Financial Bank 9/08/14 – 10/05/14 Statement for Account ending xxxxxxxx9022;

12. 9/20/13 Certificate of Title for 2010 Mercedes-Benz S550 4Matic;

13. April 21, 2015 Notice of Satisfaction of Judgment Case 13-cv-6571;

14. May 4, 2015 Release of Mortgage by First Merit Bank, N.A.;

15. 9/14/ 2016 Certified Transcript for hearing on Motion to Convert Chapter Case to a Chapter 7 case;

16. October 17, 2016 Order Granting Motion to Convert Case to Chapter 7.

## DEFENDANT'S EXHIBIT LIST

1) Mortgage and Security Agreement granted by the Debtor to Auriemma dated and recorded with the DuPage County Recorder of Deeds on July 2, 2015 with Balloon Rider

2) Certificate of Title of 2010 Mercedes-Benz issued on September 2013

3) Release of mortgage by FirstMerit Bank related to 810 Brentwood Drive, Bensenville, Illinois 60106 dated April 20, 2015.

4) Wire transfer of $12,000 relating to the closing of a separate real estate transaction from Auriemma to the Debtor related to a real estate transaction.

5) 2-3-2013 State Farm Insurance Denial letter

6) 2015 941 1st Quarter for Best Seats

7) 2015 941 3rd Quarter for Best Seats

8) 2015 W-3 Best Seats

9) Best Seats annual reports 2015-2016

10) Best Seats annual reports and tax returns for 2014 and 2012

11) Best Seats Available Annual Reports 2014-2016

12) Best Seats Available Bank Statement for January – December, 2012

13) Best Seats Available Bank Statement for January – December, 2013

14) Best Seats Available Bank Statement for January – December, 2014

15) Best Seats Available Bank Statement for January – December, 2015

16) Best Seats Available Bank Statement for January – April, 2016

17) Best Seats annual reports and tax returns for 2014 and 2012

18) Chart of Accounts of Best Seats Available

19) 2015 W-3 Best Seats Available

20) W-2 for Employees for 2015 of Best Seats

21) Ferrari Financial Docs Midwest Bank 8-12-2015

22) Midwest Bank Financial Statements from 8-12-2015

23) Profit & Loss for Best Seats for 2014-2015

24) Current Inventor List of Best Seats Available as of 1/26/2017

25) Commercial Net Lease of Best Seats Available

26) Quickbooks of Best Seats Available

27) Release of mortgage by FirstMerit Bank related to 810 Brentwood Drive, Bensenville, Illinois 60106 dated April 20, 2015

28) Sales Journal 2011-2015 of Best Seats Available

29) 2013-2015 Sales Tax Reports of Best Seats Available

30) 2012-2015 Tax Returns of Best Seats Available with W-2 Statements

31) Website Appraisal of Best Seats Available

32)   April 5, 2016 Settlement Communication letter for settlement discussions only from Debtor to FirstMerit with fax receipt.

Dated: December 29, 2017

By: /s/_____    By: /s/ J. Kevin Benjamin_____
    Elizabeth Bates, Attorney for                            Attorney for the Debtor/Defendant
DAVID R. BROWN, not individually
but as Trustee for Robert J. Ferrari

Elizabeth A. Bates, Esq.                J. Kevin Benjamin, Esq. (#6202321)
Springer Brown, LLC                     Benjamin | Brand | LLP
300 S. County Farm Road, Suite I        1016 W. Jackson Boulevard
Wheaton, IL. 60187                      Chicago, IL 60607-2914
Telephone: (630) 510-0000               Telephone: (312) 853-3100
ebates@springerbrown.com                Facsimile : (312) 577-1707
                                        kevin@benjaminlaw.com